Approved: _____
JACOB WARREN
Assistant United States Attorney

U.S. DISTRICT COURT
FILED
MAR 01 2017
S.D. OF N.Y.

ORIGINAL

DOC #_____

17 MAG 1532

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA       :     **SEALED COMPLAINT**

          - v. -                :    Violation of 18 U.S.C.
                                     §§ 2261A(2) and 2
JUAN THOMPSON,                  :
                                     COUNTY OF OFFENSE:
          Defendant.            :    NEW YORK

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   CHRISTOPHER MILLS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and charges as follows:

## COUNT ONE
### (Cyberstalking)

   1. From at least in or about July 2016 up to and including at least on or about March 1, 2017, in the Southern District of New York and elsewhere, JUAN THOMPSON, the defendant, with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, used the mail, any interactive computer service and electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate and foreign commerce to engage in a course of conduct that placed that person in reasonable fear of the death of and serious bodily injury to that person and caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, to wit, THOMPSON circulated false and threatening information to, about, and in the name of a woman ("Victim-1") over the Internet, which caused Victim-1 substantial emotional distress.

   (Title 18, United States Code, Sections 2261A(2) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with the FBI, and I have been involved in the investigation of JUAN THOMPSON, the defendant. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses, and others, as well as my examination of reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

3. In recent months, the FBI has been investigating a series of threats across the country principally targeting Jewish Community Centers ("JCC"), schools, and other organizations that provide service to and on behalf of the Jewish community (the "JCC Threats"). Based on the FBI's investigation, JUAN THOMPSON, the defendant, appears to have made some of the JCC Threats as part of a sustained campaign to harass and intimidate Victim-1. As set forth in greater detail below, THOMPSON's harassment of Victim-1 appears to have begun shortly after their romantic relationship ended and to have included, among other things, defamatory emails and faxes to Victim-1's employer, see infra ¶¶ 4(c), 4(h), 4(k)-(n), false reports of criminal activity by Victim-1, see infra ¶¶ 5,9, and JCC Threats in Victim-1's name, see infra ¶ 7.

## THOMPSON'S STALKING OF VICTIM-1

4. Based on my involvement in this investigation, the FBI's interview of Victim-1, and my review of materials that Victim-1 has provided to the FBI, I have learned the following, in substance and in part:

    a. Victim-1 works at a social service organization in the greater New York area ("Company-1"). In or around 2015 and 2016, Victim-1 was involved in a romantic relationship with JUAN THOMPSON, the defendant.

    b. On or about July 26, 2016, Victim-1 ended Victim-1's romantic relationship with THOMPSON.

2

c. On or about July 27, 2016, Company-1's executive director (the "Executive Director") received an email from someone purporting to be a producer with a national news organization (the "Hoax News Email") stating that Victim-1 had been pulled over for drunk driving, and was currently being sued for spreading a sexually transmitted disease. Based on my review of records provided to the FBI, it appears the Hoax News Email was sent from an IP address that THOMPSON used to access one of his social media accounts as recently as three days before the Hoax News Email was sent.

d. Over the next several weeks, Victim-1 received text messages and emails, purportedly from a close friend and relative of THOMPSON, stating, in substance and in part that:

i. THOMPSON had been the victim of computer hacking by an unknown person, and THOMPSON was not responsible for the recent acts of harassment towards Victim-1;

ii. THOMPSON was sorry for hurting Victim-1, and THOMPSON had written a check to compensate Victim-1;

iii. THOMPSON had been the victim of a robbery and shooting, had multiple gunshot wounds, and had gone into cardiac arrest; and

iv. THOMPSON was dying of his injuries and was going to be taken off of life support.

e. Based on my review of law enforcement records, it appears that THOMPSON had not, in fact, been the victim of a shooting.

f. In or around August 2016, Victim-1 obtained a New York State order of protection (the "Order of Protection") against THOMPSON. Victim-1 renewed the Order of Protection against THOMPSON in October and December 2016.

g. In or around September 2016, THOMPSON told Victim-1 that THOMPSON's computer had been hacked by someone in Africa.

h. On or about September 12, 2016, the Executive Director received an anonymous email stating, in substance and in part, that Victim-1 has a sexually transmitted

3

disease and Victim-1 should not be working at an organization who helps individuals with sexually transmitted diseases.

i. On or about September 20, 2016, Victim-1 received an anonymous email attaching nude photographs of Victim-1 and threatening to release the photographs to the public. On or about September 21, 2016, Victim-1 received a similar anonymous email attaching nude photographs of Victim-1 and threatening to release the photographs to the public.

j. On or about October 5, 2016, the human resources manager at Company-1 received an email from an email address that Victim-1 knows to have been used by THOMPSON (the "Thompson Account"),[1] stating, in substance and in part, that Victim-1 had threatened to kill THOMPSON.

k. On or about October 11, 2016, Company-1 received two faxes from anonymous senders stating, in substance and in part, that Victim-1 was anti-Semitic (the "Hoax Faxes"). The Hoax Faxes contained a screenshot of Victim-1's username on a particular social media service, and included anti-Semitic statements that were purportedly written by Victim-1.

l. On or about October 15 and 16, 2016, a Company-1 employee that Victim-1 supervises received emails from different anonymous email addresses, stating, in substance and in part, that Victim-1 has a sexually transmitted disease. The emails also contained a picture of Victim-1's leg.

m. On or about October 28, 2016, the Executive Director received an email that stated, in substance and in part, that Victim-1 has a sexually transmitted disease and that Company-1's clinical records had been hacked.

n. On or about November 8, 2016, a Company-1 board member received an anonymous fax with a picture of Victim-1, which stated, in substance and in part, that Victim-1 has a sexually transmitted disease.

5. Based on the FBI's conversations with officers from the New York City Police Department (the "NYPD"), and my review of police reports prepared by the NYPD, I have learned the following, in substance and in part:

---

[1] Victim-1 has received other emails from THOMPSON from the Thompson Account. Additionally, the Thompson Account's username includes THOMPSON's last name.

4

a. On or about October 15, 2016, the National Center for Missing and Exploited Children ("NCMEC") received an electronic communication from an anonymous source using a particular internet protocol address (the "Thompson IP Address"), which stated: "I was at a disco-tech two weeks ago and met [Victim-1] who said she watched child porn. I thought she was joking until she showed me two pictures, on her phone, of a child engaged in sex acts." The anonymous source also provided Victim-1's name, address in New York City, and Company-1's information.

b. I have reviewed AT&T records, which show the Thompson IP Address is subscribed to in the name of a particular individual ("Individual-1"). The subscriber information lists Individual-1 as residing at a particular address in St. Louis, Missouri (the "Thompson Address") and provides a phone number for the account ("Phone-1"). Based on my review of a law enforcement database, I know JUAN THOMPSON, the defendant, resides at the Thompson Address because, among other things, the St. Louis Police Department interviewed THOMPSON at the Thompson Address in November 2016.

c. On or about November 22, 2016, a detective with the NYPD (the "Detective") called Phone-1 and asked to speak to Individual-1. A male voice answered the call and purported to be Individual-1. The Detective asked Individual-1 if he knew THOMPSON, and Individual-1 said no. The Detective informed Individual-1 that the Detective needed to make a notification to anyone related to THOMPSON. Individual-1 placed the Detective on hold, and a male voice picked up and said that he was THOMPSON. The Detective asked THOMPSON if THOMPSON had ever seen or known Victim-1 to possess child pornography, and noted that the allegation NYPD received regarding Victim-1 possessing child pornography was from the Thompson IP Address where THOMPSON resides. THOMPSON said that he did not think Victim-1 possessed child pornography and told the Detective that his email accounts were hacked a few weeks ago. When the Detective spoke with THOMPSON, more than a month had elapsed since the anonymous tip to NCMEC. The Detective told THOMPSON that THOMPSON's conduct must stop, and that THOMPSON should not attempt to contact Victim-1.

**JANUARY AND FEBRUARY 2017: THE JCC THREATS**

6. As set forth below, it appears that JUAN THOMPSON, the defendant, has made at least eight JCC Threats nationwide as part of his campaign of harassment against Victim-1. These threats appear to fall into two categories. The first

5

category includes threats that appear to have been made in Victim-1's name. See infra ¶ 7. The second category includes threats that appear to have been made in THOMPSON's own name but which THOMPSON has later claimed were made by Victim-1 in an effort to falsely implicate THOMPSON. See infra ¶ 8.

### JCC Threats in Victim-1's Name

7. Based on my review of police reports and the FBI's conversations with other law enforcement agents, I have learned the following:

    a. On or about February 21, 2017, at approximately 1:28 a.m., an email account ("Email Account-1")[2] was used (the "February 21, 2017 email") to send a message to the Anti-Defamation League ("ADL"),[3] which stated: "[Victim-1's name and birthdate] is behind the bomb threats against jews. She lives in nyc and is making more bomb threats tomorrow." As noted above, in recent months, the FBI has been investigating a series of threats to Jewish community organizations. See supra ¶ 3.

    b. On or about February 22, 2017, at approximately 10:27 a.m., the ADL received a phone call from an unknown individual who stated in substance and in part that there was "C-4," that is, explosive material, in the ADL's New York office, and that it would be "detonated within one hour." The caller made the call using a voice disguiser and from an untraceable phone number. Immediately after the call, the ADL's New York Office, located in midtown Manhattan, contacted emergency services, which swept the ADL's New York Office. No explosives were found.

    c. On or about February 21, 2017, at approximately 1:08 a.m., the Council on American-Islamic Relations received an email from an anonymous email account

---

[2] On February 24, 2017, The Honorable Henry B. Pitman authorized a search warrant for Email Account-1. Based on my review of Email Account-1's contents, it appears that Email Account-1 had been compromised and that Email Account-1's true user was unaware that the above-referenced message had been sent.

[3] The ADL is a non-profit civil rights organization with a particular emphasis on combating anti-Semitism.

6

("Email Account-2")[4] that stated: "[Victim-1's name and birthdate] a social worker in Nyc has put a bomb in the Jewish center in Dallas. She leads a group called Affirm in nyc and is behind the jewish threats across the country."

        d.    On February 20, 2017, at approximately 10:38 p.m., the JCC in San Diego, California (the "San Diego JCC") received an email from Email Account-2 that stated: "[Victim-1's name and birthdate] hates Jewish people is the head of a ring and put a bomb in the center at [the San Diego JCC's address] to kill as many Jews asap. She is from Nyc and lived in San Diego before Nyc. Tomorrow. Ask her acquaintances she hates jews."

### JCC Threats in THOMPSON's Name

        8.    Based on my review of FBI reports, I have learned the following, in substance and in part:

        a.    On or about January 28, 2017 the Jewish History Museum located in Manhattan received a bomb threat from Email Account-2, which stated: "Juan Thompson put 2 bombs in the History Museum set to go off Sunday. [THOMPSON's birthdate]." A sweep of the Jewish History Museum was conducted by the NYPD and no bomb was found.

        b.    On or about February 1, 2017, a Jewish school in Farmington Hills, Michigan received a bomb threat from Email Account-2 (the same email account that was later used to send a threat in Victim-1's name, see supra ¶ 7(c)), which stated: "Juan Thompson [THOMPSON's birthdate] put two bombs in your school last night. He is eager for Jewish newtown." Based on my training and experience, this email's use of the phrase "Jewish newtown" appears to refer to a December 2012 school shooting in Newtown, Connecticut, in which a gunman murdered twenty victims.

        c.    On or about February 1, 2017, a Jewish school in Manhattan received two separate bomb threats from Email Account-2 (see supra ¶¶ 7(c),8(b)), within ten minutes of each other, which both stated: "Juan Thompson [THOMPSON's birthdate] put two bombs in the middle school last night. He is eager to a Jewish newtown."

---

[4]    Based on my review of law enforcement reports, I have learned, among other things, that Email Account-2 is an email address produced from a web-based, anonymous email generator.

7

d. On or about February 7, 2017 a JCC in Manhattan received a bomb threat from Email Account-2 (see supra ¶¶ 7(c),8(b)-(c)), which stated: "Juan Thompson [THOMPSON's birthday] put two bombs in the office of the Jewish center today. He wants to create Jewish newtown tomorrow. Look at his twitter [the Thompson Twitter Account, see infra ¶ 9]."

9. Based on my review of publicly available portions of a Twitter Account that appears to be used by JUAN THOMPSON, the defendant (the "Thompson Twitter Account"),[5] I know that the Thompson Twitter Account recently posted the following messages regarding Victim-1:

a. On or about February 24, 2017, the Thompson Twitter Account posted: "Know any good lawyers? Need to stop this nasty/racist #whitegirl I dated who sent a bomb threat in my name & wants me to be raped in jail." Embedded below the Twitter message are three paragraphs of text, which state, among other things, "[s]he [Victim-1], though I can't prove it, even sent a bomb threat in my name to a Jewish center, which was odd given her antisemitic statements. I got a visit from the FBI. So now I'm battling the racist FBI and this vile, evil, racist white woman."

b. On or about February 26, 2017, the Thompson Twitter Account posted: "I'm been tormenting by an anti-semite [sic] named [Victim-1]. She works for Company-1. She sent an antijewish bom threat in my name. Help."

c. On or about February 26, 2017, the Thompson Twitter Account posted: "The hatred of Jews goes across all demos. Ask NYC's [Company-1]. They employ a filthy anti-Semite in [Victim-1]. These ppl are evil."

10. Based on my conversations with Victim-1, I know that the above-described course of conduct has caused Victim-1 substantial emotional distress.

---

[5] Among other things, the Thompson Twitter Account has a profile photograph of THOMPSON and a username that includes THOMPSON's first and last name. Victim-1 has also advised me that Victim-1 understands the Thompson Twitter Account to be used by THOMPSON.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JUAN THOMPSON, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
CHRISTOPHER MILLS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1st day of March, 2017

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9